280        APPELLATE COURTS OF ILLINOIS.

Laughlin v. Chicago Ry. Equipment Co. et al., 182 Ill. App. 280.

## Henry D. Laughlin, Appellant, v. Chicago Railway Equipment Company and American Trust & Savings Bank, Appellees.

### Gen. No. 17,831.

1. BONDS, § 21*—*when obligor takes as bona fide purchaser.* Obligor of negotiable bonds receiving them as pledgee from an innocent purchaser for value before maturity has good title though he has knowledge of the irregularity of the transfer.

2. MORTGAGES, § 499*—*burden of proof.* In an action to foreclose a trust deed given to secure certain bonds where the obligor claims title to the bonds through an innocent purchaser, the burden is not upon the obligor to prove that his transferor was an innocent purchaser for value before maturity.

3. MORTGAGES, § 656*—*when evidence supports decree.* Decree dismissing a bill to foreclose a trust deed given to secure certain bonds and finding that obligor was not liable to complainant on such bonds, *held* supported by the evidence.

4. CORPORATIONS, § 448*—*power to loan money.* Whether it is *ultra vires* for a corporation to loan money depends upon circumstances.

Appeal from the Circuit Court of Cook county; the Hon. HARRY HIGBEE, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed October 13, 1913.

DEFREES, BUCKINGHAM, RITTER, CAMPBELL & EATON and RANDOLPH LAUGHLIN, for appellant.

MUSGRAVE, OPPENHEIM & LEE, for appellees.

MR. JUSTICE BROWN delivered the opinion of the court.

This appeal is from the same decree which was brought under the consideration of the Court in Number 17,943, (*ante,* p. 262,) in which an opinion has just been filed. That appeal was by the Chicago Railway Equipment Company; this is by Henry D. Laughlin. That one attacked the decree particularly so far as it related to the bonds of series M (which are described in

said opinion); this one attacks it only so far as it deals with eight bonds of series K, which the master in his report, that was partially discussed in the opinion in 17,943, found were (like the bonds of series M) outstanding, unpaid, and the property of Laughlin and susceptible of foreclosure by him. This finding, however, the chancellor overruled.

The pleadings, as far as the bonds in controversy herein are concerned, are sufficiently stated in the opinion mentioned, but the master's report and the court's decree in relation to these eight bonds are not therein alluded to and are set forth here so far as material, in order that the issues raised by this appeal may clearly appear. Reference to the opinion in 17,943 will sufficiently elucidate that which might otherwise seem defective in the statement of this case.

The master says: "*As to the 25 bonds of series K.* These bonds Leigh received from the American Trust & Savings Bank on January 28, 1899, at which time he also received the above mentioned series M. bonds. The said series K bonds he evidently held until September 10, 1900, for as the coupons on them became due he deposited them to his credit. Laughlin on September 10, 1900, sent to the Chicago Railway Equipment Company a letter, which is as follows:"

(Here the master quotes at length a letter from Laughlin to the Equipment Co., requesting it to pay before October 1, 1900, fifty of the bonds of series K, but notifying the Company that he was the true owner of the other fifty bonds of series K, as well as of the one hundred bonds of series M (the bonds of series M had on September 20, 1913, already been ostensibly paid by the Equipment Company), and that no one had any authority from him or right in himself to collect them. The master then finds that on November 7, 1900 (which was after the payment of the fifty bonds, which Laughlin requested paid), the Equipment Company sent a letter to the American Trust & Savings Bank, inclosing a check for $25,547.95, drawn by the Chicago Railway Equipment Co. by E. B. Leigh, Treasurer, on the

American Trust & Savings Bank, payable to American Trust & Savings Bank, Trustee, and countersigned by H. S. Burkhardt, the President of the Equipment Co., for the payment of the fifty series K bonds from fifty-one to one hundred, together with interest on the same from the last coupon date, July 1, 1900, to December 8, 1900. The letter concludes ''Upon presentation of these bonds please pay and cancel the same and return the cancelled bonds to this Company. All in accordance with the terms of the Trust Deed of this Company to you dated June 29, 1898, and securing these bonds.'')

The master then proceeds: ''Upon receipt of this check the American Trust & Savings Bank, Trust Department, executed a receipt. The voucher recites that the check of $25,547.95 was given on account of fifty series K bonds. The American Trust & Savings Bank then drew four checks, two in favor of other banks in Chicago, one in favor of the Chicago Railway Equipment Company for $4,088.50, and another in favor of the Chicago Railway Equipment Company for $76.86. The $4,000 of the check for $4,088.50 represented the principal of 8 series K bonds. Leigh testified that the 8 series K bonds were deposited with the Chicago Railway Equipment Company as collateral to the note of R. W. Grieves for $4,000; that he remembered the Chicago Railway Equipment Co. loaned Mr. Grieves some money; that he, Grieves, undoubtedly got those bonds from him (Leigh) and gave them as collateral to his note. The evidence does not show that the balance of $25,000, that is, the other $21,000, being a part of the check for $25,547.95, went to either Leigh or the Chicago Railway Equipment Company. Inasmuch as the Chicago Railway Equipment Company knew when it received the 8 series K bonds from R. W. Grieves that those bonds belonged to Laughlin, it must now be held responsible to Laughlin for the amount of those bonds. It cannot be claimed that if Mr. R. W. Grieves was an innocent purchaser for value of said bonds from Leigh, that therefore the Chicago Railway Equipment Company could receive the bonds from Grieves and have them cancelled, when at the same time, the Chicago Railway Equipment Company knew that those bonds

in Leigh's possession were Laughlin's bonds and that he, Leigh, had no right to transfer them to Grieves, and that in transferring them to Grieves he was guilty of a breach of trust.    *    *    *

There is due the complainant, Henry Laughlin, from the defendant, the Chicago Railway Equipment Company, the following sums:    *    *    *

8 series K Bonds $500 each................4,000.00.
Int. at 5% from Jan. 28, 1899, to July 1, 1910.2,284.40.
Int. at 7% from July 1, 1910, to Aug. 5, 1910..   19.40.

*    *    *    *    *    *    *    *    *

In conclusion, therefore, I recommend that a decree be entered in accordance with the prayer of the bill of complaint and the foregoing findings."

To these findings regarding the eight bonds of series K the Chicago Railway Equipment Company filed objections, which were afterwards ordered to stand as exceptions before the chancellor as follows:

*    *    *    *    *    *    *    *    *

*Thirtieth:*
    *    *    *    For that the said Master has erroneously found that Leigh held Series K bonds until Sept. 10, 1900.

*    *    *    *    *    *    *    *    *

*Thirty-second:* For that the said Master has erroneously found that the Chicago Railway Equipment Company knew when it received as pledgee eight (8) bonds of Series K from R. W. Grieves that such bonds belonged to Laughlin and that it must be held responsible to Laughlin for the amount of the bonds.

*    *    *    *    *    *    *    *    *

*Forty-fifth:* For that the said Master has erroneously found that the bonds remained the property of Laughlin after Leigh had disposed of the same to the American Trust and Savings Bank and R. W. Grieves.

*    *    *    *    *    *    *    *    *

*Fifty-second:* For that the said Master omitted to find that the Equipment Company is not indebted to the complainant on account of    *    *    *    Series K of said bonds."

Laughlin filed objections to the master's report, which contained no mention of the eight bonds here in

284    APPELLATE COURTS OF ILLINOIS.

Laughlin v. Chicago Ry. Equipment Co. et al., 182 Ill. App. 280.

question. His third objection to the report was that the master found the complainant was not entitled to a foreclosure of the trust for and on account of forty-two bonds of series K and coupons and interest thereon. This, with his other objections to the master's report, were repeated by him as exceptions to the said report at the hearing before the court.

The decree of the chancellor, after said hearing, overruled all the exceptions of Laughlin and sustained the exceptions of the Equipment Company "in so far and in so far only as the same relate to certain 8 Series K bonds mentioned and referred to in the Master's report," and overruled said exceptions "as to all other matters except only said eight Series K bonds," and found that "as to all bonds referred to in the Bill of Complaint, other than 100 Series M bonds, and as to all relief prayed for in said bill as to such other bonds, the equities are with the defendant, Chicago Railway Equipment Company, and the complainant is entitled to no relief." As to these eight K bonds it found specifically that on November 7, 1900,

"The Bank drew and delivered its certain checks as Trustee, among which was one in favor of the Equipment Company for Forty Hundred Eighty-eight and 50-100 Dollars. This check included Four Thousand Dollars which represented the principal of eight (8) Series K bonds then presented by the Equipment Company to the Bank for payment, and which were then by the Bank paid to the Equipment Company and marked 'cancelled'; *that these eight Series K Bonds had been transferred by Leigh to one R. W. Grieves some time prior to November 7, 1900, and that said Grieves acquired the same in good faith without any knowledge or notice of Laughlin's rights therein;* that subsequently said Grieves borrowed Four Thousand Dollars ($4,000) from the Chicago Railway Equipment Company and gave as collateral security thereto said eight bonds of Series K and such bonds were held by the Chicago Railway Equipment Company as collateral to said indebtedness on the 7th day of November, 1900; that on November 7, 1900, a check of the Chicago Rail-

way Equipment Company was drawn on the American Trust & Savings Bank for $25,547.95, payable to the order of American Trust & Savings Bank, Trustee, and signed on behalf of said Equipment Company by Leigh as Treasurer and countersigned by H. S. Burkhardt, President; that said check was delivered to the American Trust & Savings Bank as Trustee, with instructions to apply the same in payment of fifty of the Series K bonds, and upon presentation of the bonds to pay and cancel the same and return the canceled bonds to the Equipment Company in accordance with the terms of the Trust Deed dated June 29, 1898, securing said bonds; that the American Trust & Savings Bank received said check and executed a receipt to the Equipment Company therefor; that thereupon the Equipment Company took the eight bonds of series K held by it as pledgee of the said Grieves and presented the same to the Trustees for payment, and that the Trustee received the said eight Series K bonds and gave to the Equipment Company its check for the sum of Four Thousand and Eighty-eight Dollars and Fifty Cents ($4088.50), and thereupon the said Equipment Company applied the money so paid upon the Grieves note held by it and returned the same to Grieves as paid and cancelled.''

From this decree Laughlin, as well as the Chicago Railway Equipment Company, appealed. As before stated, the appeal of the Equipment Company was because of the relief granted to the complainant on the one hundred bonds of series M. It has been disposed of by the decision of this court contemporaneously herewith. The appeal of Laughlin was because of the refusal of relief to him with reference to these eight bonds of series K. The assignments of error made by him in this court all relate to said eight bonds. We give them, inasmuch as stress is laid in the arguments on the attitude assumed by the parties to the master's report and the decree as affecting their right to complain of parts of it. The first assignment is that the Circuit Court erred in sustaining, so far as the same were sustained, the exceptions of the Equipment Com-

286          APPELLATE COURTS OF ILLINOIS.

Laughlin v. Chicago Ry. Equipment Co. et al., 182 Ill. App. 280.

pany numbered thirteen, forty-five, fifty, fifty-one and fifty-two. The second is that the court erred in accordingly modifying and failing to sustain the report of the master with reference to the eight K bonds. The third is that it erred in denying relief to the complainant and foreclosure as to the said eight bonds; the fourth, that it erred in decreeing that the Equipment Company is not liable to complainant on those bonds; and the fifth that it erred in dismissing complainant's bill as to said eight bonds.

It is conceded by the appellee and is therefore the expressed opinion of both parties, that the master's report placed his recommendation of relief to the complainant as to these eight bonds on an incorrect statement of the law. He said that even if Grieves was an innocent purchaser for value of said bonds from Leigh, the Equipment Company's knowledge that Leigh had no right to sell them would prevent that Company as the pledgee of Grieves from having a good title to them and their proceeds. This is unsound. The bonds were negotiable paper, and once having been in an innocent purchaser's hands, with a right in him to collect them, those eight bonds passed to his pledgee for value, whatever notice or knowledge of irregularity in Leigh's transfer of them it had.

But the appellant Laughlin insists that although this statement of the law, based on the facts assumed hypothetically by the master to exist, is incorrect, the conclusion of the master that complainant is entitled to foreclosure is correct, because the facts as shown by the evidence are not as assumed by him, but different therefrom. He argues that the evidence should be considered as showing that the bonds remained from January 8, 1899, to November 7, 1900, in the possession of Leigh and that no innocent purchaser intervened between him and the Equipment Company before the latter presented them for payment on December 7, 1900.

It may be noted that the master does not find absolutely that Grieves was an innocent purchaser of the

bonds in question, but makes it an assumption when stating his conclusion of law. He does, however, recite that "Leigh testified that Series K bonds were deposited with the Chicago Railway Equipment Company as collateral to the note of R. W. Grieves for $4,000; that he remembers the Chicago Railway Equipment Company loaned Mr. Grieves some money; that he, Grieves, undoubtedly got those bonds from him (Leigh) and gave them as collateral to his note," and this recital, in the absence of any reference to any contradiction or doubt thrown on the testimony, may perhaps be held to imply a finding consistent with it, so far as it goes. The decree, however, is much more specific. The chancellor finds therein that these eight bonds "had been transferred by Leigh to one R. W. Grieves some time prior to November 7, 1900, and that said Grieves acquired the same in good faith without any knowledge or notice of Laughlin's rights therein; that subsequently said Grieves borrowed four thousand dollars from the Chicago Railway Equipment Company and gave as collateral security thereto said eight bonds of series K, and such bonds were held by the Chicago Railway Equipment Company as collateral to said indebtedness on the 7th day of November, 1900." It is manifest that if this finding of facts in the decree is so justified by the evidence that we should not disturb it, it follows that we should not disturb the conclusion of law that Laughlin has no right to a foreclosure of these particular bonds and that the decree should be affirmed in the present appeal.

Apart from the contention of the appellee that the finding of facts in question is so justified, it takes other positions in defense of the decree. It insists, first, that because the appellant did not by objection and exception to the master's finding of facts (his conclusion of law being erroneously in appellant's favor) challenge that finding before the court, he is now foreclosed from doing so.

In our view of the case it is not necessary for us to

288    APPELLATE COURTS OF ILLINOIS.

Laughlin v. Chicago Ry. Equipment Co. et al., 182 Ill. App. 280.

pass on this point on the assumption that the master's findings of fact were identical with those subsequently made by the court.   The argument undoubtedly would be stronger were that the case, but, as we have pointed out, the findings of fact by the court are much more specific and definite than those by the master.   This deprives the point of any great force.   We think the court's findings must be viewed independently.   Nor do we think that the assignments of error by appellant fail to call in question these findings.  The third, fourth and fifth assignments at least sufficiently do so.   Other considerations urged by the appellee in this case in sup-port of this portion of the decree and in opposition to the remainder of it, we have disposed of in the other appeal mentioned.    But we have carefully examined the evidence in the record concerning these eight bonds of series K, and conceding that it leaves very much to be desired in the way of definiteness and certainty, our conclusion nevertheless is that the findings of the decree as to the facts should not be disturbed by us.    To say that the case made in support of them is ''a mere guess which evaporates into thin air upon the application of the first test,'' as counsel for appellant insists, is altogether too severe a characterization of it.

Leigh, on being interrogated on cross-examination and having his attention called not only to the account book entries in the books of the Equipment Company of the payment to the Equipment Company of the $4,088.20 check on Dec. 8, 1900, but to the specific entries in relation to interests earned on Bills Receivable of $88.90, testified: ''I have found, I think, an explanation of that,   *   *   *   Those bonds were deposited with the Chicago Railway Equipment Company as collateral to the note of Grieves for $4,000.   *   *   *   I remember now we loaned Mr. Grieves some money. He undoubtedly got those bonds from me and gave them as collateral to his note.   When that was paid it was credited to bills receivable.''

There is indefiniteness in regard to the items from

the various account books of the Equipment Company offered in evidence, which cannot be charged altogether to the witness, but for which, to an equal extent at least, the cross-examining counsel was responsible. Thus, counsel say: "From page 388 of the same ledger under the account entitled 'Interest earned,' we offer the item reading as follows: 'Date December 8, Folio 71. Descriptive, C. R. E. Co's bonds. Credits $88.20.' " This item was the immediate occasion for the testimony of Leigh above noted. Apparently but not certainly referring to this same entry (although the word "Grieves" does not appear in it, as it was thus read into the record), counsel in the same connection asked Leigh, "Do you think this entry you have pointed out was made two different times—'Grieves' written in at one time and 'C. R. E. bonds' made at another time?" To which Leigh only replied that he did not make the entry. Even if the entry on page 388 of the ledger was not the one thus referred to as containing the notation, "Grieves," the journal entry on page 128, which appellant's counsel say "was the only entry on the books of the Equipment Company concerning any bond transaction of any kind or character between Grieves and the Equipment Company," could not have been the one referred to, because that Journal Entry, as it appears on page 320 of the record, does not contain "C. R. E. bonds."

It is true that Leigh's recollection and knowledge were shown by further cross-examination not to be independent, specific, or definite, but we think, on the record as it stands, the deductions made from it by the chancellor must stand too, so far as we are concerned. Undoubted as is our duty as well as our right to review the controverted questions of fact in an appeal in equity, something is nevertheless due the master's report on such a question, approved and developed and made more specific by the chancellor. A presumption in its favor is to be overcome to justify reversal.

It is a question not without doubt in our mind whether the proposition so vigorously insisted on by the appellant is sound, that because the matter of ownership of these bonds originally is *res judicata* between Leigh and Laughlin and, therefore, inasmuch as the Equipment Company had all the notice and knowledge of the ownership which Leigh had, is also *res judicata* between that Company and Laughlin—the burden of proving that a transferee before maturity was an innocent purchaser for value falls upon the Equipment Company in this case. Undoubtedly where a transferee of negotiable paper, which has been obtained from the payor by fraud or from the payee by robbery, claims under it, that burden is on him, but this is a different case;—one where paper rightfully in the possession of the transferor is transferred by him, apparently under a contention made in good faith (although afterward judicially decided against him), that he had a right to do so. *Ignorantia legis neminem excusat,* but does that maxim require us to reverse the usual presumptions concerning the character in which a transferee from Leigh of these bonds before maturity, held them? That if Grieves held them and pledged them to the Equipment Company, it was before maturity, we think is clear. The bonds were payable on their face on or before July 31, 1908, and while the Company had covenanted with Laughlin in the "Rent readjustment contract" to set apart a fund and avail itself of its option of prepayment in a certain contingency, this certainly did not, so far as a transferee was concerned, make them overdue in 1900, although the contingency had happened. On the other hand, the Equipment Company did avail itself of its option of payment "before" July 31, 1908, and accelerate maturity by its letter of November 7, 1900, with its check for principal and interest to date and thirty days thereafter.

We do not, however, think it necessary for us to pass on the question of the burden of proof. Assuming

that the appellant is right in his contention regarding it, we still do not feel ourselves justified in reversing the decree of the Circuit Court as to these eight bonds.

The point made by the appellant that the Equipment Company, if it loaned money to Grieves and took these bonds as collateral, was acting *ultra vires* is immaterial. It is not a matter, assuming it to be true, of which the appellant can take advantage. But a corporation may loan money in the natural course of its business. Whether it is *ultra vires* or not depends on circumstances. None are disclosed here to throw any light on the matter.

The decree of the Circuit Court is again affirmed.

*Affirmed.*