## Calumet and Chicago Canal & Dock Company and Murry Nelson, Jr., Trustee, Defendants in Error, v. Abel Davis, Trustee, Plaintiff in Error.

### Gen. No. 20,755.

1. CORPORATIONS, § 448*—*when loan authorized by charter.* A dock company, organized under a special charter of this State, which provides that the company "may purchase, possess and occupy real and personal estate, and may sell, lease and employ the same in such manner as it shall determine," where such charter does not expressly prohibit the lending of money from its surplus funds, as incident to the sale of a part of its real estate, a loan made in such a manner by the company to the vendee of a part of such real estate, for which it takes his notes and a deed of trust to secure the payment of the same, is valid.

2. CORPORATIONS, § 448*—*when loan incident to sale of realty.* Section 1 of the General Corporation Act (J. & A. ¶ 2418), which provides that "corporations may be formed in the manner provided by this act for any lawful purpose except banking, insurance, real

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

estate brokerage, the operation of railroads and the business of loaning money," does not prohibit a dock company, which, by the terms of its special charter, "may purchase, possess and occupy real and personal estate, and may sell, lease and employ the same in such manner as it shall determine," from making a loan from its surplus funds as incident to the sale of a part of such real estate and taking a deed of trust as security for the same.

3. CORPORATIONS, § 448*—*when corporation not in business of loaning money.* Where the only evidence as to the number of loans made by a dock company was that of two witnesses who testified that only one loan, which was made for $25,000 for two or three months on collateral, was made beside the one in question, which was made as incidental to a sale of a part of its real estate, *held,* that the company was not engaged in the business of loaning money prohibited by the General Corporation Law (J. & A. ¶ 2418).

4. CORPORATIONS, § 448*—*when loan of surplus funds authorized.* A loan made by a dock company as incidental to a sale of its real estate from the surplus funds of the company, where it is authorized to make such sale by the terms of its charter, is valid as an investment of such surplus funds.

5. CORPORATIONS, § 448*—*when evidence shows that loan was made from surplus.* Where a dock company made a loan, and the president of the company testified that such loan was made from its surplus funds and his testimony was not contradicted, the finding of the master that the loan was made from the surplus funds of the company is warranted by the evidence.

6. CORPORATIONS, § 342*—*when question of ultra vires cannot be raised.* Where a dock company is authorized by its special charter not only to purchase, possess and occupy real estate but also to sell it, and it makes a sale of a part of such real estate and makes a loan from its surplus funds as incidental to such sale, taking a deed of trust to secure the same, the party to whom such loan has been made having become bankrupt the trustee of his estate cannot complain that such loan was *ultra vires.*

Error to the Circuit Court of Cook county; the Hon. Jesse A. Baldwin, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Affirmed. Opinion filed May 25, 1915.

**Statement by the Court.** On January 16, 1913, the complainants, Calumet and Chicago Canal & Dock Company, a corporation (hereinafter called the Dock Company), and Murry Nelson, Jr., as trustee under

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

a certain trust deed, dated January 22, 1909, and also as trustee under another trust deed, dated June 19, 1911, filed their bill in the Circuit Court of Cook county to foreclose said trust deeds which were given by Allen Conkling on certain property in South Chicago, Cook county, Illinois. Prior to the time of the filing of the bill Allen Conkling had been adjudged a bankrupt in the United States District Court for the Northern District of Illinois, and Abel Davis had been appointed trustee of Conkling's bankrupt estate, and complainants by order of said District Court had obtained leave to foreclose said trust deeds and to make Abel Davis, trustee, a party defendant. The bill was filed against said Conkling and said Davis, trustee, and others, as defendants. The bill alleged, *inter alia,* that on January 22, 1909, Conkling owed the Dock Company $50,000, and made and executed five principal notes of even date, payable to the order of himself and by him indorsed and delivered; that four of said notes were for $5,000 each, due respectively on or before twelve, eighteen, twenty-four and thirty months after date, and one note for $30,000, due on or before three years after date, all of said notes bearing interest at six per cent. per annum, payable semiannually; that to secure payment of said notes Conkling executed and delivered the trust deed dated January 22, 1909, conveying to Murry Nelson, Jr., trustee, all of that portion of Block 138 lying west of the right of way of the Pittsburg, Fort Wayne & Chicago Railway Company, and also conveying certain lots in the east half of Block 139, all in said Dock Company's subdivision in South Chicago; that the Dock Company is the legal holder and owner of said notes; that Conkling has paid no interest on the notes since January 22, 1911, and that all of them are overdue and unpaid; that Conkling, in breach of the conditions of the trust deed, has failed to pay for the insurance on the buildings on the premises and to pay certain taxes; that the Dock Company,

having acquired title to the strip of land lying between said Blocks 138 and 139 and south of the south line of east Ninety-seventh street extended east, and known as Erie avenue, conveyed the same on June 19, 1911, to said Conkling, and he executed and delivered the trust deed, dated June 19, 1911, conveying said strip of land to Murry Nelson, Jr., trustee, with the proviso that said strip of land should be subject to all the terms and conditions and covenants contained in said trust deed of January 22, 1909; and that complainants have the right to foreclose both of said trust deeds, etc. The bill prayed for a foreclosure and for a receiver.

The answer of Abel Davis, trustee of the estate of Allen Conkling, bankrupt, alleged, *inter alia,* that the Dock Company is a corporation organized and existing by virtue of a certain special act of the Illinois Legislature, in force March 10, 1869 (said special act was set forth in full); that said Dock Company has no rights, powers or authority other than those conferred upon it by said special act; that for many years prior to January 22, 1909, Conkling was the owner of said portion of said Block 138; that if said Conkling was indebted to the Dock Company on January 22, 1909, it was by reason of a loan which the Dock Company made to Conkling in the sum of $50,000 on or about said date; that if· Conkling executed any notes or trust deed he did so as evidence and as security for said loan; that the Dock Company had no right, title or authority under its charter to make said loan to Conkling or to accept as security therefor any trust deed executed by him, and, in particular, had no. authority to accept as security for the loan the first trust deed described in said bill of complaint; that such trust deed so accepted is null and void and of no force and effect whatsoever, and the Dock Company can obtain no rights thereunder and can bring no action to enforce or foreclose the same, because the act of the Dock Company in making the loan and accepting the trust

deed was *ultra vires* and beyond its corporate powers and authority, and that such trust deed creates no lien upon said property which is superior to the title of this defendant; and that the second trust deed described in said bill is likewise null and void and creates no lien in favor of complainants which is superior to the title of this defendant.

A replication to the above answer was filed, certain other defendants were defaulted, and issue was joined as to other defendants who had filed answers, and the cause was referred to a master in chancery to take proofs and report the same, together with his opinion on the law and evidence.

The master found, *inter alia,* that on January 22, 1909, Conkling executed and delivered the notes and first trust deed mentioned, and on June 19, 1911, executed and delivered said second trust deed; that the Dock Company is the holder and owner of said notes and the indebtedness represented thereby; that said notes and first trust deed were given to the Dock Company "as part of a transaction" by which the Dock Company sold to Conkling for $15,000 said lots in Block 139, and that "as an inducement for such purchase" the Dock Company gave Conkling credit for the whole purchase price of $15,000, and made a loan to him "in addition" of $35,000, out of the "surplus funds" of the Dock Company, and took from Conkling the notes and trust deed as security for said indebtedness, amounting to $50,000; that the Dock Company is a corporation organized by a special act of the Legislature of Illinois, in force March 10, 1869; that the Dock Company would not have made to Conkling said loan of $35,000 in excess of the purchase price of said lots in Block 139, "except for the purpose of inducing said Conkling to purchase said lots"; that Conkling had sought to obtain from the Dock Company a loan secured only by a trust deed covering said portion of Block 138, but the Dock Company had declined to make

618 APPELLATE COURTS OF ILLINOIS.

Calumet & Chicago C. & D. Co. et al. v. Davis, 192 Ill. App. 613.

such loan, or to make any loan except as incidental to the sale of said lots in Block 139; that under its charter the Dock Company had power to sell said lots in Block 139, and to loan to Conkling said sum of $35,000 out of its surplus funds as incidental to such sale; that said notes and trust deed are valid and legal obligations of said Conkling; and that at various times the Dock Company has paid out moneys for taxes and insurance upon said property, etc. The master recommended that a decree of foreclosure be entered. Abel Davis, trustee, filed objections to the master's report, which were overruled, and the same were ordered to stand as exceptions on the hearing before the court.

On June 5, 1914, a decree of foreclosure was entered, in which the court overruled said exceptions and found that the equities of the cause were with the complainants, etc.; that the trust deed of January 22, 1909, made by said Conkling, and the indebtedness secured thereby were a valid lien on the real estate therein described; that the trust deed of June 19, 1911, was also a lien on the real estate therein described; that Allen Conkling was personally liable for the payment of the indebtedness secured by said trust deeds, of which indebtedness the Dock Company was the owner, and that there was due the Dock Company from said Conkling the sum of $64,644.93, and also the sum of $3,000 for solicitor's fees. The court decreed that unless said sums, together with interest and costs, be paid to the Dock Company within five days, the property should be sold by the master in the usual manner, etc. On July 3, 1914, the master sold the property at public sale to the Dock Company for $67,000, and on July 18, 1914, the court ordered that the master's report of sale be confirmed.

On September 4, 1914, this writ of error was sued out by said Abel Davis, trustee. On February 6, 1915, it appearing to this court that the codefendants with said Abel Davis, trustee, in the Circuit Court did not

join in the prosecution of said writ of error, but that their names were used as coplaintiffs in error pursuant to the statute, and it further appearing that the appearance of certain of said coplaintiffs in error was duly entered and that service of summons was duly had on the others, and that all of said coplaintiffs in error have failed to assign errors on the record in said cause or join in the prosecution of said writ of error, it was ordered that a judgment of severance be entered against said coplaintiffs in error, and leave was granted to said Abel Davis, trustee of the estate of Allen Conkling, bankrupt, to prosecute this writ of error alone, and the cause was taken.

In the special act of the Legislature of Illinois, in force March 10, 1869, incorporating the Dock Company, it was provided in section 1 of the Act that the corporation "shall have perpetual succession, may contract and be contracted with, * * * may purchase, possess and occupy *real and personal estate,* and may sell, lease and *employ the same* in such man-ner *as it shall determine;* and shall have the right to borrow money, and pledge their property and franchises to secure the same, and have and exercise all the powers necessary as a corporation, to carry out the objects of this act." Sections 2, 3 and 4 contain provisions, respectively, regarding the amount of its capital stock, the management of its business affairs and the location of its principal office in Chicago. By section 5 the company was given power to enter upon and make surveys of lands between the south branch of the Chicago River, or the Illinois and Michigan Canal, and the Calumet River, for the purpose of locat-ing and constructing a canal from such point on the Calumet River to such point on said south branch of the Chicago River, or said Illinois and Michigan Canal, as the company should determine, and to build, operate and maintain docks, basins, shipyards, warehouses and piers, and to make rules for the passage of all boats

620    APPELLATE COURTS OF ILLINOIS.

Calumet & Chicago C. & D. Co. et al. v. Davis, 192 Ill. App. 613.

and vessels. By section 6 the company was given power to acquire by condemnation certain lands, the fee of which when acquired should become vested in it. By section 7 the company was given the right to intersect any highway or railroad with the canal, and by section 8 to construct bridges.

On the hearing before the master, Murry Nelson, Jr., testified, in substance, that he had been president of the Dock Company since 1908; that before the Chicago fire the company had acquired certain land, some of which it has not needed since, and that when possible the same is sold; that the company has no other source of income than the sale of its real estate; that its assets are about $3,000,000; that it spends about $100,000 a year for taxes and assessments; that whenever the company makes a sale of any of its lands, it keeps on hand enough to meet said taxes and assessments, and incidentally the company loans out any surplus funds it may have; that he had charge of the negotiations (first with Eugene Hogue, agent for said Conkling, and later with Conkling himself) which led up to the making of the notes and trust deed, dated January 22, 1909; that early in 1909 Hogue requested of him that the Dock Company make a loan to Conkling on said portion of said Block 138, then owned by Conkling, and on which there was then a past due mortgage of about $30,000 for money previously loaned Conkling by the First National Bank of Chicago; that he (Nelson) told Hogue that the Dock Company "was not in the business of making loans"; that he tried to get other parties to make the loan to Conkling, but without success; that subsequently Hogue suggested that Conkling might buy said lots in Block 139, and asked if the Dock Company, in addition to making this sale, would make a loan on said portion of Block 138 and said lots in Block 139; that thereupon further negotiations were had which resulted in the Dock Company selling to Conkling said lots in Block 139 for

$15,000, giving Conkling credit for said purchase price and loaning him also $35,000 in cash, and taking Conkling's said notes for $50,000, secured by said trust deed, dated January 22, 1909; that the Dock Company at this time "had surplus funds" from which it made the loan; that he, as president of the company, would not have made the loan "except as an incident to the sale" of said lots in Block 139; that he did not know of any loans, other than the one in question, made by the company on real estate security; and that since said transaction was consummated he did not remember of but one other loan being made, and that was for $25,000, made for two or three months on collateral, which loan had been paid. The testimony of Eugene Hogue, a witness for defendant, as to the making of said loan and sale, is in substantial accord with that of said Nelson. Hogue also testified that after the papers and money had passed, the First National Bank was paid the amount of Conkling's mortgage indebtedness to it and that Conkling got the difference. The testimony also showed that Allen Conkling was adjudged a bankrupt on November 18, 1911; that unsecured claims had been filed and allowed against said Conkling's estate, amounting to $60,597; and that if said trust deeds are valid liens on said properties there are substantially no assets with which to pay said unsecured claims.

JESSE LOWENHAUPT and OSCAR M. WOLFF, for plaintiff in error.

BENTLEY, BURLING & SWAN, for defendants in error.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

Counsel for the defendant, Abel Davis, trustee, etc., state at the commencement of their written argument here filed: "The only question before this court is

the validity of the trust deed covering Blocks 138 and 139. It is our contention that the act of the Dock Company in making the loan to Conkling was absolutely *ultra vires,* and that therefore no action can be brought upon the trust deed. * * * We contend that nothing in the Dock Company's charter can be twisted into an express power to loan money, and that the making of this loan was not the exercise of a power reasonably and necessarily incidental to any express power of the corporation." Counsel then argue that, assuming that the Dock Company did have express power to buy and sell land, the making of said loan was not the exercise of a power reasonably incidental to or implied from the power to sell land. And counsel further contend that the master's finding that this loan was made out of the surplus funds of the Dock Company is not warranted by the evidence. At the conclusion of their written argument counsel state: "It is the common misfortune of the complainant and the unsecured creditors who are represented by plaintiff in error that Allen Conkling became bankrupt. If Mr. Conkling were today solvent, * * * the unsecured creditors could enforce payment of their claims, and the Dock Company, although it could not foreclose its trust deed, could bring an action for money had and received, and * * * recover its money. * * * The Dock Company cannot profit by its own wrong and now enforce an *ultra vires* security, and thus recover its claim in full while other creditors take nothing."

Counsel for the complainants contend (1) that by the language of the Dock Company's special charter express power is given that company to loan money; (2) that the loan in question was proper as an incident to the sale of said lots in Block 139 to Conkling; (3) that said loan was valid as an investment of surplus funds of the Dock Company; and (4) that as Conkling received the benefits of the loan both he and the trustee

of his bankrupt estate are estopped, under the facts of this case, to deny the power of the Dock Company to make the loan.

In the discussion of the first point counsel for complainants contend that while the Dock Company was not authorized under its special charter to engage in the business of loaning money, it was expressly given power to lend money whenever such action might be reasonably incidental to the accomplishment of any legitimate corporate object, or whenever it had moneys on hand upon which it might desire to earn interest. Section 1 of the charter states that the Dock Company "may purchase, possess and occupy real and personal estate, and may sell, lease and *employ* the same in such manner as it shall determine." And counsel argue that money is personal property, that the right given to the company to *employ* personal estate includes the right to *employ* money "in such manner as it shall determine," and that to so *employ* money includes the right to *lend* money whenever reasonably incidental to any legitimate corporate purpose, and such lending is not expressly prohibited or is not against public policy. There is force in counsel's argument. We do not find in the Dock Company's special charter, granted March 10, 1869, any express prohibition against its making such a loan as the one in question and taking security therefor. And we do not think that it was then, or is now, contrary to public policy for a corporation to make such a loan. Section 1 of the present general act concerning corporations (J. & A. ¶ 2418), which was passed in 1872; provides that "corporations may be formed in the manner provided by this act for any lawful purpose except banking, insurance, real estate brokerage, the operation of railroads and the *business of loaning money.*" This does not mean that the occasional or incidental lending of money by corporations, or the formation of corporations, for the purpose of engaging in the business of

624 APPELLATE COURTS OF ILLINOIS.

Calumet & Chicago C. & D. Co. et al. v. Davis, 192 Ill. App. 613.

loaning money, is prohibited by the policy of the law, but does mean that corporations may not be formed under *said act of 1872* for the purpose of engaging in that business. *Stevens v. Pratt*, 101 Ill. 206; *Brown v. Scottish-American Mortg. Co.*, 110 Ill. 235. The Dock Company's special charter was granted before said Act of 1872 was passed, and the evidence shows that it was not engaged in the *business* of loaning money.

By section 1 of its special charter the Dock Company was expressly given power to purchase and *sell* real estate. The evidence shows that at the time the loan in question was made it was possessed of considerable real estate which it was desirous of selling. Even assuming that the Dock Company did not have *express* power under its charter to make the loan in question, we think it had *implied* power so to do, as reasonably incidental to the sale to Conkling of said lots in Block 139. 3 Thompson on Corp., sec. 2181; *Kraft v. West Side Brewery Co.*, 219 Ill. 205; *Union Water Co. v. Murphy's Flat Fluming Co.*, 22 Cal. 621, 629; *Holmes, Booth & Haydens v. Willard*, 125 N. Y. 75, 81; *Central Lumber Co. v. Kelter*, 201 Ill. 503, 507. And we think that the loan was valid as an investment of the surplus funds of the Dock Company. 1 Clark & Marshall on Priv. Corp., sec. 186; *Bank of Berwick v. George Vinson Shingle & Mfg. Co.*, 132 La. 861, 863; *Garrison Canning Co. v. Stanley*, 133 Iowa 57, 60; *Western Boatmen's Benev. Ass'n v. Kribben*, 48 Mo. 37, 43; *Laughlin v. Chicago Ry. Equipment Co.*, 182 Ill. App. 280, 291. We cannot agree with the contention of counsel for defendant, viz., that the finding of the master that the loan was made out of the surplus funds of the Dock Company is not warranted by the evidence. Murry Nelson, Jr., president of the Dock Company, testified to the effect that at the time of the making of the loan the company had surplus funds in its possession from which the loan was made, and his testimony was not contradicted.

And, assuming that the Dock Company did not have *express* power to make the loan, we are of the opinion that as Conkling received the full benefits of the loan the defense of *ultra vires* cannot prevail under the facts disclosed. *Bradley v. Ballard,* 55 Ill. 413, 417; *Darst v. Gale,* 83 Ill. 136, 140; *Kadish v. Garden City B. L. & Bldg. Ass'n,* 151 Ill. 531, 537; *Rector v. Hartford Deposit Co.,* 190 Ill. 380, 389. The making of the loan was not an act which was prohibited by the Dock Company's charter, or one which it could not under any circumstances perform. Neither can we say that it was an act which was wholly outside of the general scope of the powers conferred upon it by the legislature. The present case is to be distinguished, we think, from the cases of *National Home Bldg. & L. Ass'n v. Home Sav. Bank,* 181 Ill. 35; *Fritze v. Equitable Bldg. & L. Society,* 186 Ill. 183; *Steele v. Fraternal Tribunes,* 215 Ill. 190; *Converse v. Emerson, Talcott & Co.,* 242 Ill. 619; and *Mercantile Trust Co. of Illinois v. Kastor,* 191 Ill. App. 219.

For the reasons indicated the decree of the Circuit Court is affirmed.

*Affirmed.*